UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

C. SUKARI HARDNETT, *on behalf of herself and all others similarly situated, et al.*,

*Plaintiffs*,

v.

SELECT PORTFOLIO SERVICING, INC.,

*Defendant*.

Civil Action No. 24-01534 (AHA)

**Memorandum Opinion and Order**

Two D.C. homeowners sue the company that services their mortgages, Select Portfolio Servicing, Inc., on behalf of a putative class, alleging the company charges unlawful "pay-to-pay" fees when borrowers make mortgage payments online or by phone. The homeowners assert claims under the D.C. Consumer Protection Procedures Act ("CPPA") and the D.C. Mortgage Lender and Broker Act ("MLBA"). Select Portfolio answered the amended complaint and moves for judgment on the pleadings, arguing that the homeowners' claims are barred and fail on the merits. The Court denies the motion.

**I.    Background**

Select Portfolio is a residential mortgage servicer. ECF No. 16 ¶ 2. Lenders and note holders pay Select Portfolio to act as their agent and exercise their rights and responsibilities. *Id.* ¶ 27. Loan servicers generally offer multiple ways to make mortgage payments by check and automatic bank withdrawal; however, to reduce their costs and offer borrowers more flexibility, they may also offer payment online or by phone. *Id.* ¶¶ 44–48. Select Portfolio provides borrowers the option of paying online or by phone, but it attaches a fee of up to $15 for such payments, often

called a "pay-to-pay" fee. *Id.* ¶ 49. According to the amended complaint, processing a phone or online payment costs Select Portfolio less than fifty cents per transaction, and Select Portfolio profits from the difference. *Id.* ¶¶ 50, 53.

C. Sukari Hardnett and Lisa Dennis own property in D.C. with a mortgage that is serviced by Select Portfolio. *Id.* ¶¶ 7–8. They make their mortgage payments by phone or online, and Select Portfolio has accordingly charged them a pay-to-pay fee to do so. *Id.* ¶¶ 65, 68. The homeowners brought this putative class action alleging Select Portfolio's practice of charging pay-to-pay fees violates the CPPA and the MLBA. *Id.* ¶¶ 100–17. Select Portfolio filed a motion to transfer the case to the Eastern District of New York, which the Court denied. ECF No. 17. Select Portfolio then moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and the Court stayed discovery pending resolution of the motion. ECF No. 28.[1]

## II.   Discussion

The federal rules allow a party to move for judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). The moving party "shoulders a heavy burden of justification": it must show "that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Dist. No. 1 v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019) (citation omitted). The court must "accept as true the allegations in the opponent's pleadings" and give those pleadings "all reasonable inferences." *Id.* at 761 (citations omitted). Judgment on the pleadings is not appropriate if "material questions of fact are presented by the pleadings." *Id.* (citation omitted).

Here, Select Portfolio argues for judgment on the pleadings because threshold issues bar the claims asserted and the claims fail on the merits, but the Court disagrees on both.

---

[1]   This case was initially assigned to the Honorable Randolph D. Moss and was reassigned to the Honorable Amir H. Ali on November 27, 2024.

**A. Select Portfolio's Timeliness And Notice Defenses Are Unpersuasive**

Select Portfolio raises a threshold issue as to each named plaintiff: it asks the Court to conclude that Hardnett's claims are time-barred because she was not charged any pay-to-pay fees during the applicable limitations period, and that Dennis's claims are barred for failing to provide adequate pre-suit notice. ECF No. 28-1 at 17–21. Neither argument is convincing.

First, the Court cannot conclude based on the pleadings that Hardnett's claims are untimely. The D.C. Circuit has made clear that "courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). Because "statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Id.*; *see also, e.g.*, *Vaughan v. Cap. City Protective Servs. II*, No. 20-cv-2932, 2025 WL 275705, at *4 (D.D.C. Jan. 23, 2025) (explaining that in context of motion for judgment on the pleadings, the defendant must show that "no reasonable person could disagree on the date on which the cause of action accrued, and the complaint on its face is conclusively time-barred" (citation omitted)).

The amended complaint does not conclusively show that Hardnett's claims are time-barred. The parties appear to agree the CPPA and the MLBA have three-year statutes of limitations. ECF No. 28-1 at 17; ECF No. 29 at 33–35; *see, e.g.*, *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 323 (D.C. 2008) (explaining that residual three-year statute of limitations applies where no term is specified). Select Portfolio says it has not charged Hardnett any pay-to-pay fees since 2020, and therefore any such fees are outside of that three-year window. ECF No. 28-1 at 17–18. As Select Portfolio acknowledges, however, the amended complaint itself does not state when Hardnett was charged the relevant fees. *Id.* at 17. To the contrary, the complaint's language indicates these charges have been ongoing. *See* ECF No. 16 ¶ 65 (alleging that Hardnett "makes

payments over the phone" and that "[e]ach time she does so, [Select Portfolio] charges her a Pay-to-Pay Fee"). Hardnett "was not required to plead facts in anticipation of" Select Portfolio's affirmative statute of limitations defense. *See Xilojitzep v. Nat'l R.R. Passenger Corp.*, No. 22-cv-3788, 2024 WL 1350380, at *2 (D.D.C. Mar. 21, 2024) (citation omitted).

Select Portfolio says a letter it sent in response to Hardnett's pre-suit notice shows she has not been charged any pay-to-pay fees since prior to March 2021. ECF No. 28-1 at 18; *see* ECF No. 28-5. According to Select Portfolio, the letter may be considered because Hardnett "references" it in the amended complaint. ECF No. 28-1 at 4 n.6 (citing ECF No. 16 ¶¶ 77, 79). This argument is dubious given that the cited paragraphs refer to the notice sent by Hardnett but never mention Select Portfolio's letter. ECF No. 16 ¶ 77 (alleging Hardnett "made a written pre-suit demand upon [Select Portfolio]"); *id.* ¶ 79 (alleging Select Portfolio "was given a reasonable opportunity to cure the breaches complained of herein, but has failed to do so"). Even if the letter were merely referenced in the amended complaint, moreover, it would not necessarily be properly considered at this stage. *See, e.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 71 (D.D.C. 2016) (finding that documents were not integral to plaintiffs' claims where they were "merely cited as the source of certain factual allegations within the Complaint"); *see also Lindsey v. District of Columbia*, 609 F. Supp. 2d 71, 76 n.4 (D.D.C. 2009) (declining to consider matters outside the pleadings, which would necessitate conversion to a motion for summary judgment and "an opportunity to seek discovery"). And in any event, the letter does not conclusively show Hardnett's claims are time-barred; it simply states that a fee was assessed to Hardnett's account and "the account is due for March 1, 2021." ECF No. 28-5 at 4. Because the Court cannot discern that

4

Hardnett's claims are time-barred on their face, Select Portfolio's timeliness defense fails, at least in this posture.[2]

Nor can the Court grant judgment to Select Portfolio as to Dennis's claims based on failure to provide adequate pre-suit notice. Select Portfolio notes that in Dennis's mortgage agreement, which is attached to the amended complaint, she agreed to sue for any alleged breach only after notifying Select Portfolio and affording it "a reasonable period after the giving of such notice to take corrective action." ECF No. 28-1 at 18 (quoting ECF No. 16-3 ¶ 20). According to Select Portfolio, the pleadings show Dennis failed to comply with that requirement. *Id.* at 18–21.

As an initial matter, some courts have held that such notice provisions apply only to breach of contract claims, and not to statutory claims like Dennis brings. *See, e.g.*, *DeSimone v. Select Portfolio Servicing, Inc.*, 748 F. Supp. 3d 136, 150 (E.D.N.Y. 2024) (collecting cases and observing that "numerous courts . . . have held that notice-and-cure provisions that are identical or nearly-identical to the ones at issue here do not extend to claims that exist independent of a contractual agreement between the parties, such as statutory claims" (internal quotation marks and citation omitted)); *Richards v. NewRez LLC*, No. 20-cv-1282, 2021 WL 1060286, at *21 (D. Md. Mar. 18, 2021) (noting courts have held "claims that exist independent of a contractual agreement between the parties, such as allegations of deceptive trade practices, are not subject to the notice and cure provisions that might otherwise apply"). But even if Select Portfolio is correct that the notice provision applies here, the amended complaint specifically alleges Dennis made a written pre-suit demand on Select Portfolio informing it that the fees were unfair and requesting a refund. ECF No. 16 ¶ 78; *see McFadden v. Nationstar Mortg. LLC*, No. 20-cv-166, 2021 WL 3284794, at

---

[2] The Court therefore need not reach Hardnett's alternative argument that the statute of limitations was tolled due to the COVID-19 pandemic. ECF No. 29 at 34–35.

5

*14 (D.D.C. July 30, 2021) ("*McFadden I*") (noting that "at this stage, the question is one of pleading," and that the plaintiffs sufficiently alleged they provided notice), *report and recommendation adopted*, 2022 WL 1001253 (D.D.C. Apr. 4, 2022) ("*McFadden II*").

Select Portfolio again relies on documents outside the amended complaint, citing a pre-suit letter that Dennis sent. ECF No. 28-1 at 19; *see* ECF No. 28-7. For similar reasons as above, the Court arguably could disregard the letter at this stage because it is "merely cited as the source of certain factual allegations within the Complaint." *Domestic Airline Travel*, 221 F. Supp. 3d at 71. But even considering the letter, it indicates that Dennis wrote one month prior to suit, notified Select Portfolio of "an additional service fee," and asked the company to "look into this practice." ECF No. 28-7 at 2. Select Portfolio offers no authority that would allow the Court to conclude that the time provided or the notice itself was unreasonable as a matter of law. *See McFadden II*, 2022 WL 1001253, at *19 (rejecting argument that plaintiffs' notice had to provide more "specific information" and concluding that mortgage agreement did not require party "to give notice of a specific legal claim prior to any judicial action"); *McFadden I*, 2021 WL 3284794, at *14 (concluding that mortgage agreement required plaintiffs to give notice only of the alleged breach, not "to give a recitation of each right [the defendant] allegedly violated"). The Court accordingly cannot grant Select Portfolio judgment on the pleadings on that basis.

### B. Select Portfolio Has Not Shown It Is Entitled To Judgment On The Homeowners' CPPA Claims

Select Portfolio argues the homeowners' CPPA claims fail because the company cannot be sued under the statute and, even if it could be, the amended complaint does not allege the company's conduct violates the statute. The Court disagrees.

The CPPA protects consumers from merchants who "engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby." D.C. Code

§ 28-3904. It defines "merchant" as a person "who in the ordinary course of business does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who in the ordinary course of business does or would supply the goods or services which are or would be the subject matter of a trade practice." *Id.* § 28-3901(a)(3). And it defines "goods and services" to include "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types." *Id.* § 28-3901(a)(7).

Despite Select Portfolio's arguments to the contrary, it is a "merchant" under the CPPA. The D.C. Court of Appeals has recognized the CPPA applies to real estate mortgage transactions and mortgage refinancing, but it has not yet resolved whether the Act covers a mortgage loan servicer. *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1027 (D.C. 2013). Other courts in this District "have found that the [CPPA] applies to many aspects of the mortgage industry." *McFadden I*, 2021 WL 3284794, at *11 & n.13 (collecting cases). Under the plain terms of the CPPA, Select Portfolio acts as a merchant because it provides consumer services that are "part[] of the economic output of society." The homeowners allege that Select Portfolio performs services in connection with the property they own, including customer service obligations and other obligations assumed by the lenders. ECF No. 16 ¶¶ 28, 44. Similarly, in *McFadden I*, the complaint adequately alleged a consumer-merchant relationship by identifying multiple examples of services the defendant provided, including "paying taxes and insurance from escrow accounts, modifying mortgages, and property preservation." 2021 WL 3284794, at *12. The complaint also alleged that the defendant's role as a mortgage servicer was "a stand-alone consumer *service* that [the defendant] operated to generate substantial revenue," which was "another marker that this was

7

indeed a consumer service that was 'part[] of the economic output of society.'" *Id.* (alteration in original) (quoting D.C. Code § 28-3901(a)(7)).[3]

This case is therefore distinct from Select Portfolio's authorities concluding that conduct did not fall within the CPPA's ambit because the defendant did not provide services to consumers directly. *See, e.g.*, *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 948 (D.C. Cir. 2017) (finding that conduct did not fall under CPPA where the defendant was a debt collector "attempting to recoup funds on behalf of a creditor who did not itself provide [the plaintiff] with any credit"). The amended complaint plausibly alleges that Select Portfolio provides services to borrowers and thus is a merchant within the meaning of the CPPA. That is especially true given the "broad remedial purposes" of the Act, which "defines its terms comprehensively in keeping with the purpose to 'assure that a just mechanism exists to remedy *all* improper trade practices.'" *DeBerry v. First Gov't Mortg. & Invs. Corp.*, 743 A.2d 699, 700 (D.C. 1999) (quoting D.C. Code § 28-3901(b)(1)).

Select Portfolio argues that this is inconsistent with another decision of this District, *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268 (D.D.C. 2011), which concluded the plaintiff's pleadings had not alleged the defendant loan servicer was a merchant under the CPPA. *Id.* at 279–80. But *Busby* undertook the same inquiry—there, the plaintiff had "identified no goods or services she purchased or received from [the defendant]." *Id.* at 280; *see also id.* at 279–80 ("[T]he amended

---

[3] Select Portfolio insists that the court reached this conclusion in *McFadden* because the defendant was both the mortgage lender and servicer, whereas here Select Portfolio is only the servicer. ECF No. 30 at 3. But the court made clear that "mortgage servicers are merchants." *McFadden I*, 2021 WL 3284794, at *11 (capitalization omitted). The court concluded the defendant was a merchant "as a lender and as a servicer" and, accordingly, found it necessary to reject the defendant's argument "that a mortgage-loan servicer can *never* be a merchant." *Id.* at *12; *see also id.* at *12 n.14 (discussing nonbinding authorities that "provide applicable support for treating mortgage-loan servicers as merchants").

complaint contains no factual allegations whatsoever indicating the existence of a consumer-merchant relationship between the plaintiff and either defendant."). Select Portfolio is incorrect insofar as it suggests that "poor pleading" in *Busby* resulted in "a categorical ruling that a mortgage-loan servicer can *never* be a merchant." *McFadden I*, 2021 WL 3284794, at *12. And, in contrast to *Busby*, here the homeowners have specifically alleged Select Portfolio provides services to consumers to make it a merchant under the CPPA.

Select Portfolio's second basis for judgment in its favor on the CPPA claims—that the homeowners allege no conduct violating the CPPA—is also unpersuasive. The D.C. Court of Appeals has explained a merchant's conduct "is a violation of the CPPA if the merchant 'misrepresented' or 'failed to state' a material fact." *Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020). And a misrepresentation or omission is material "if a reasonable person 'would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction' or 'the maker of the representation knows or has reason to know' that the recipient likely 'regard[s] the matter as important in determining his or her choice of action.'" *Id.* (alteration in original) (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013)).[4]

---

[4]  Select Portfolio suggests the heightened Rule 9(b) pleading standard for fraud claims applies here. ECF No. 28-1 at 7. Several courts in this District have held otherwise, and this Court agrees. *See, e.g.*, *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 91 (D.D.C. 2016) (explaining that "imposing the particularized pleading requirements of Rule 9(b) on [CPPA] claims would undermine the statute's purpose"); *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236, 267 (D.D.C. 2015) (declining to hold plaintiff's CPPA claim to pleading requirements for fraud); *see also Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1073 n.20 (D.C. 2008) (observing that state consumer protection statutes were "intended to overcome the pleadings problem associated with common law fraud claims by eliminating the requirement of proving certain elements such as intent to deceive and scienter").

The homeowners have sufficiently alleged that Select Portfolio's practice of charging pay-to-pay fees is unfair and deceptive. This includes allegations that, at most, the mortgages authorize Select Portfolio to pass along actual costs incurred to borrowers. ECF No. 16 ¶¶ 42–43. Instead, Select Portfolio misleads borrowers by charging a "fee" of up to $15 for the purpose of processing a payment when the cost of processing is, in fact, little to nothing—and there is no benefit to consumers in return, since Select Portfolio, like other loan servicers, could offer the option to pay by phone or online for convenience, free of charge. *Id.* ¶¶ 47–52. And the amended complaint alleges that charging borrowers—who have no choice as to their loan servicer—in this way allows Select Portfolio to unfairly collect fees that "can add up to hundreds of dollars over the life of a single loan." *Id.* ¶¶ 50, 53–54. The homeowners have thus alleged that Select Portfolio's practices are unfair and deceptive in violation of the CPPA. *See Frankeny*, 225 A.3d at 1005; *McFadden I*, 2021 WL 3284794, at *12–13 (concluding that complaint plausibly alleged pay-to-pay fees were misleading where defendant represented to borrowers it had the right to collect such fees, even though it did not, and defendant never disclosed to borrowers that it had created an unfair profit center for itself); *McFadden II*, 2022 WL 1001253, at *17 (affirming that conclusion); *see also, e.g.*, *DeSimone*, 748 F. Supp. 3d at 168 (concluding under New York law that plaintiff sufficiently alleged deceptive statement based on Select Portfolio's representation that it was permitted to impose pay-to-pay fees).

Select Portfolio argues that the homeowners have not identified any misrepresentation or omission that is material because they have not shown they would have done anything differently absent the misrepresentation or omission. ECF No. 28-1 at 23. But as discussed above, the D.C. Court of Appeals' controlling interpretation of the statute requires only that "a reasonable person would attach importance to [the misrepresentation or omission's] existence or nonexistence in

determining his or her choice of action" or that Select Portfolio knew or should have known that someone paying the fee would likely "regard[] the matter as important in determining his or her choice of action." *Frankeny*, 225 A.3d at 1005 (internal quotation marks and citation omitted). That court has rejected prior attempts to require more burdensome showings under the text of the CPPA. *See, e.g.*, *id.* at 1004 (explaining that "in light of the plain language and the legislative intent of the CPPA, a consumer need not allege intentional misrepresentation of a material fact or an intentional failure to disclose a material fact under D.C. Code § 28-3904(e) and (f)"). Here, the homeowners have alleged that failure to disclose that the unlawful fee provides hundreds of dollars in profits over the course of a loan, rather than covering processing, was misleading, and the Court finds no basis to go further and require the homeowners to include a specific allegation of "how they would have acted differently." *McFadden II*, 2022 WL 1001253, at *17 (citation omitted). The question whether Select Portfolio's representations to borrowers "were actually material and tended to mislead" is for a jury. *McFadden I*, 2021 WL 3284794, at *12 (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1075 (D.C. 2008)).[5]

Select Portfolio also argues that the pay-to-pay fees cannot be unfair or deceptive as a matter of law because they are authorized by the terms of the homeowners' mortgage agreements

---

[5] Select Portfolio maintains that the homeowners' CPPA claims improperly allege "unfairness" without specifying a particular provision of D.C. Code § 28-3904. ECF No. 28-1 at 32. But the CPPA's purpose is to "assure that a just mechanism exists to remedy all improper trade practices." D.C. Code § 28-3901(b)(1); *see also Atwater v. D.C. Dep't of Consumer & Regul. Affs.*, 566 A.2d 462, 466 (D.C. 1989) ("Although § 28-3904 makes a host of consumer trade practices unlawful, its list of such practices was not designed to be exclusive. The remainder of the statute obviously contemplates that procedures and sanctions provided by the Act will be used to enforce trade practices made unlawful by other statutes."). And some courts have declined to dismiss standalone CPPA claims. *See Hettinger v. Bozzuto Mgmt. Co.*, No. 23-cv-3687, 2024 WL 1833855, at *8 (D.D.C. Apr. 26, 2024) (allowing CPPA catch-all claim to proceed, though noting that defendant "does not separately address this unfairness challenge"). The Court thus is not convinced at this stage that Select Portfolio is entitled to judgment on the pleadings for the CPPA claim alleging unfairness.

11

and a consent decree in another federal case. ECF No. 28-1 at 24–29. As to the mortgage agreements, Select Portfolio relies on two provisions. First, it points to language addressing "Loan Charges," which states that the lender may charge fees related to a default, including attorney fees and property inspection and valuation fees, and that "[i]n regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee." ECF No. 16-3 ¶ 14; *see* ECF No. 28-1 at 24–26. Second, Select Portfolio relies on language addressing "Governing Law," which states that "Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract." ECF No. 16-3 ¶ 16; *see* ECF No. 28-1 at 26–28. According to Select Portfolio, these provisions both authorize the charging of pay-to-pay fees. ECF No. 28-1 at 28.

But the quoted language does not do that. The agreements' language expressly authorizes certain fees, but not pay-to-pay fees. The statement that fees not mentioned may nonetheless be permitted merely begs the question whether those fees are lawful. Indeed, the very next sentence states that the lender "may not charge fees that are expressly prohibited by . . . Applicable Law." ECF No. 16-3 ¶ 14; *see also McFadden I*, 2021 WL 3284794, at *4 (noting, in concluding that pay-to-pay fees were not permitted by another statute, that certain fees are specifically authorized and that the defendant "should have added convenience fees to this list of expressly permitted fees if it wanted to charge them"). Similarly, the provision addressing governing law says nothing to indicate pay-to-pay fees are authorized. And to the extent Select Portfolio suggests the fees are a permissible separate agreement, courts have "reject[ed] arguments that Pay-to-Pay fees constitute a separate agreement between the lender and borrower and are independent of the underlying debt." *Langston v. Gateway Mortg. Grp., LLC*, No. 20-cv-01902, 2021 WL 234358, at *2 (C.D.

12

Cal. Jan. 15, 2021); *see also McFadden I*, 2021 WL 3284794, at *10 n.10 ("Permitting an entity to claim the existence of a separate contract any time it charged a new, related fee would effectively gut the fee protections provided by the mortgage agreement and consumer protection laws . . . ."). The homeowners' claims are premised on illegality of the pay-to-pay fees, and Select Portfolio does not identify anything in the agreements that addresses their legality.[6]

Nor does the federal consent decree that Select Portfolio identifies authorize the pay-to-pay fees. ECF No. 28-1 at 28–29. More than two decades ago, the government brought claims against Select Portfolio's predecessor regarding certain servicing practices. ECF No. 28-9; *see* ECF No. 28-1 at 29 n.19. Relevant here, the court's consent order in that case provides that Select Portfolio is

> permanently restrained and enjoined, in connection with the servicing of any loan, from assessing and/or collecting any fee unless it is for services actually rendered and is . . . a reasonable fee for a specific service requested by a consumer that is assessed and/or collected only after clear and conspicuous disclosure of the fee is provided to the consumer and explicit consent is obtained from the consumer to pay the fee in exchange for the service, and such fee is not otherwise prohibited by law or the loan instruments.

ECF No. 28-9 at 10. According to Select Portfolio, this language authorizes the pay-to-pay fees. ECF No. 28-1 at 29. But nothing in this language—that Select Portfolio is restrained and enjoined from collecting fees for services not actually rendered, required to provide clear and conspicuous disclosure and obtain consent, and cannot charge fees prohibited by law—purports to authorize Select Portfolio to charge allegedly unlawful and misleading pay-to-pay fees. Indeed, that would

---

[6] Select Portfolio relies on cases interpreting similar provisions and concluding that charging pay-to-pay fees is insufficient to show breach of contract. ECF No. 28-1 at 25–26. This case involves claims of unfair and deceptive practices in violation of the CPPA, not breach of contract claims. Moreover, for the reasons stated, the Court does not find that the provisions here provide any basis to conclude that pay-to-pay fees are authorized if they are otherwise unlawful.

13

turn the purpose of the consent order, which enjoined Select Portfolio from collecting certain fees and failing to disclose information, on its head.

Select Portfolio has accordingly failed to show it is entitled to judgment on the homeowners' CPPA claims.

### C. Select Portfolio Has Not Shown It Is Entitled To Judgment On The Homeowners' MLBA Claims

Select Portfolio argues that the homeowners' MLBA claims fail because the statute does not provide a private cause of action and, even if it did, the homeowners do not allege Select Portfolio engaged in conduct that violates the MLBA. The Court, again, disagrees.

The MLBA makes it illegal for a mortgage lender, including anyone who services mortgage loans, to "[e]ngage in any unfair or deceptive practice toward any person." D.C. Code § 26-1114(d)(2); *see id.* § 26-1101(8), (11). Although the D.C. Court of Appeals has yet to resolve the issue, this Court agrees with a recent D.C. Superior Court decision concluding that the MLBA allows a private cause of action. *See* Order, *Swann v. Caliber Home Loans, Inc.*, No. 2022-CA-4127-B, at 7–8 (D.C. Super. Ct. June 16, 2025); *see also Rivera v. JPMorgan Chase Bank, N.A.*, No. 23-cv-00225, 2023 WL 6276648, at *6 n.3 (D.D.C. Sept. 26, 2023) (noting that "[n]either any District of Columbia court nor any federal court appears to have considered whether the MLBA permits a private cause of action" (alteration in original) (quoting *Mushala v. U.S. Bank, Nat'l Ass'n*, No. 18-cv-1680, 2019 WL 1429523, at *9 n.10 (D.D.C. Mar. 29, 2019))).[7]

Under District law, courts consider three factors to determine whether a statute creates a private right of action: (1) whether the plaintiff is "one of the class for whose *especial* benefit the

---

[7] The homeowners suggest the D.C. Court of Appeals has resolved the issue already because it has allowed MLBA claims to proceed. ECF No. 29 at 21; *see Logan*, 80 A.3d at 1026 (finding that certain allegations made out an MLBA claim and remanding to trial court). But the *Logan* court did not discuss the question whether the MLBA provides a private right of action.

14

statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; and (3) whether it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff." *Gebretsadike v. District of Columbia*, No. 22-cv-1951, 2023 WL 2708822, at *11 (D.D.C. Mar. 30, 2023) (quoting *In re D.G.*, 583 A.2d 160, 166 (D.C. 1990)). "The ultimate issue is whether the legislature intended to create a particular cause of action, because unless such [legislative] intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Coates v. Elzie*, 768 A.2d 997, 1001 (D.C. 2001) (alteration in original) (internal quotation marks and citation omitted).

Here, all three factors are satisfied. First, the homeowners are within the class for whose benefit the MLBA was enacted. The homeowners are borrowers of mortgage loans. The MLBA aims to protect borrowers by prohibiting mortgage lenders and servicers from defrauding or misleading borrowers and engaging in deceptive practices. *See, e.g.*, D.C. Code § 26-1114(d)(1) (making it unlawful for a servicer to "[d]irectly or indirectly employ any scheme, device, or artifice to defraud or mislead borrowers").

Second, the statute indicates a legislative intent to provide a cause of action. Section 26-1118(e) of the MLBA provides: "Nothing in this chapter shall be construed to preclude any individual or entity who suffers loss as a result of any violation of this chapter from maintaining an action to recover damages or restitution and, as provided by statute, attorney's fees." D.C. Code § 26-1118(e). The statute thus contemplates that individuals who are harmed by violations of the statute may "maintain[] an action." Select Portfolio insists this language merely preserves the right to bring claims under other statutes, not under the MLBA itself. ECF No. 28-1 at 9–10. But the

provision in question does not mention other statutes—it mentions individuals who suffer losses based on violations of "this chapter."

Select Portfolio's reliance on *Williams v. Equity Holding Corp.*, 498 F. Supp. 2d 831 (E.D. Va. 2007), is misplaced for similar reasons. ECF No. 28-1 at 10. There, the court analyzed Virginia's version of the MLBA, which provided: "Nothing in this article shall be construed to preclude any individual or entity who suffers loss as a result of a violation of Articles 3 (§ 6.1-330.53 et seq.) through 12 (§ 6.1-330.80 et seq.) of Chapter 7.3 of this title from maintaining an action to recover damages or restitution and, as provided by statute, attorney's fees." *Williams*, 498 F. Supp. 2d at 846–47 (citation omitted). The court held the provision did not create a private cause of action; instead, the provision made clear the statute did not preclude any individual who suffered loss based on violations of the other statutes from suing. *Id.* at 847. But in the D.C. MLBA, as noted above, there are no other statutes enumerated in the relevant provision, which mentions only "this chapter."[8]

Third, an implied cause of action is consistent with the purposes of the statutory scheme. As noted above, the purpose of the MLBA is to protect mortgage borrowers from unfair and deceptive practices. A private right of action furthers that purpose by allowing borrowers to enforce the protections afforded to them by the statute. Select Portfolio maintains that the legislature did not intend to create a private right of action for damages because the MLBA provides for administrative enforcement mechanisms and penalties, such as suspension of licenses. ECF No. 28-1 at 11–13. To be sure, the MLBA provides that certain D.C. officials may suspend

---

[8] Select Portfolio also argues implying a cause of action would render the phrase "as provided by statute" superfluous because section 26-1118(e) itself does not provide for attorney fees. ECF No. 28-1 at 10. But other provisions of the MLBA, such as section 26-1113(b)(3), do provide for attorney fees. So the language simply means what it says: plaintiffs can recover attorney fees where permitted by statute.

or revoke licenses for violations of the statute, may issue orders against any licensee, and may seek to enforce those orders in court. *See* D.C. Code § 26-1118(a)–(c). But in addition to those mechanisms of enforcement, the statute also makes clear that individuals who suffer losses from violations may "maintain[] an action to recover damages or restitution and, as provided by statute, attorney's fees." *Id.* § 26-1118(e). The statute thus permits private enforcement and is not limited to administrative remedies.

Select Portfolio also notes that the MLBA creates an express private right of action in another section. ECF No. 28-1 at 13–14; *see* D.C. Code § 26-1113(b)(3) ("A borrower aggrieved by any violation of this section shall be entitled to bring a civil suit for damages, including reasonable attorney's fees, against the lender."). Select Portfolio relies on *Bynum v. Equitable Mortgage Group*, No. 99-cv-2266, 2005 WL 818619 (D.D.C. Apr. 7, 2005), to argue that the inclusion of a cause of action in that section means the legislature did not intend to create a cause of action in section 26-1118(e). ECF No. 28-1 at 13–14. But the *Bynum* court simply held that the express mention of a remedy against lenders meant the plaintiff could not bring an action against a broker. 2005 WL 818619, at *17. The court did not hold that section 26-1118(e) does not create a cause of action; in fact, it stated that section 26-1118(e) "provides individuals are not precluded from bringing actions to recover for violations." *Id.* The Court accordingly concludes the homeowners have a cause of action under the MLBA.

Turning to the merits, the homeowners have sufficiently asserted violations of the MLBA. The homeowners allege Select Portfolio misled borrowers by charging fees that were not authorized by the mortgage agreements. ECF No. 16 ¶ 105. The homeowners also assert Select Portfolio engaged in a deceptive practice by failing to disclose that its costs to process payments are well below the amount of fees it charges. *Id.* ¶ 106. The homeowners have sufficiently alleged

17

Select Portfolio's practices are misleading and unfair or deceptive under the MLBA for the same reasons discussed above with respect to the CPPA. *See McFadden I*, 2021 WL 3284794, at *10 (holding that allegations regarding repeated assessment of improper fees and failure to disclose costs to process third-party transactions made out an MLBA claim); *McFadden II*, 2022 WL 1001253, at *15 (same).[9]

The homeowners also allege Select Portfolio's fees are not "reasonable" under the MLBA. ECF No. 16 ¶ 107. An MLBA regulation authorizes fees "that are reasonable and for services actually performed by the licensee or a third party providing services on behalf of the licensee." D.C. Mun. Regs. tit. 26-C, § 1118.2. The homeowners allege Select Portfolio violated this regulation by charging unreasonable fees that do not correlate with an actual service rendered by Select Portfolio. ECF No. 16 ¶ 107. Select Portfolio insists that this allegation is insufficient and that the fees are charged in exchange for Select Portfolio's agreement to accept payments by phone or online. ECF No. 28-1 at 29–32. But the homeowners have alleged that the fees are unreasonable because they dramatically exceed the cost to Select Portfolio to accept payments by phone or online, and that the fees are thus "for" Select Portfolio's profit margins rather than for any services rendered. ECF No. 16 ¶¶ 50, 53, 107. So the Court cannot conclude that this claim fails on the pleadings as a matter of law.

---

[9] Select Portfolio's arguments that the fees are authorized by the mortgage agreements and the consent order fail with respect to the MLBA claims for the same reasons already explained.

## III.    Conclusion

For these reasons, Select Portfolio's motion for judgment on the pleadings, ECF No. 28, is denied. The parties are directed to meet, confer, and file a joint status report by September 24, 2025, proposing a schedule for next steps in this matter.

                                                                             _____

                                                                             AMIR H. ALI
                                                                             United States District Judge

Date:    September 10, 2025